[J-46-2013] [MO: Todd, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 659 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | 3/28/2012 in the Court of Common Pleas, |
| | : | Criminal Division of Delaware County at |
| v. | : | No. CP-23-CR-0005045-1997 |
| | : | |
| | : | |
| ARTHUR BOMAR, | : | |
| | : | |
| Appellant | : | SUBMITTED: April 29, 2013 |

## CONCURRING OPINION

MR. CHIEF JUSTICE CASTILLE                    DECIDED: November 21, 2014

I join the Majority Opinion, subject to the following concerns respecting the discussion of Commonwealth v. Brown, 872 A.2d 1139 (Pa. 2005) (plurality) in resolving appellant's attempt to relitigate his competency to stand trial. See Majority slip op., at 18-22. Brown established a judicially-manufactured narrow "exception" to the waiver command of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, limited to claims of competency to stand trial which were defaulted on direct appeal. Brown, 872 A.2d at 1155-56 (claim respecting competence to stand trial not subject to PCRA waiver); see also Commonwealth v. Fletcher, 986 A.2d 759, 778, n.24 (Pa. 2009) (Brown spoke to single competency issue and did not speak to issue of competency to waive right to counsel for post-trial proceedings). The exception was well-intended, as I understand, but I respectfully remain of the view that the rule was both unwise and insufficiently grounded when announced, see Brown, 872 A.2d at 1161 (Castille, J.,

concurring, joined by Eakin, J.), and it remains ill-advised today. The Federal Community Defender's Office's ("FCDO") recent use, and actual misuse, of our exception defying the statutory command in multiple recent cases provides even more reason to correct our error.

Trial counsel, of course, is in the best position to know whether his client is capable of assisting in his defense. Here, as explained by the Majority Opinion, appellant's pre-trial behavior prompted his trial counsel to ask the trial court for a competency determination. The trial court complied with the request, appointed an expert to examine appellant, and followed up with a competency hearing. The court-appointed expert found appellant to be competent and, consistent with his testimony, the trial court specifically found that appellant was competent to stand trial. Notably, trial counsel agreed that appellant was competent, testifying during post-sentencing and post-conviction proceedings that appellant had the ability to participate, and actively participated, in decision-making during the pre-trial and trial proceedings. On direct appeal, this Court concluded that appellant's post-sentencing competency challenge was without merit. Commonwealth v. Bomar, 826 A.2d 831, 860-61 (Pa. 2003).

The competency to stand trial issue was finally resolved: it was fully litigated and in a timely fashion: prior to trial and on direct appeal. But, as so often the case where the FCDO appoints itself in pursuit of its obstructionist agenda in state capital cases, settled issues are miraculously resurrected; and in this case, the mistake of Brown unfortunately facilitates the FCDO's attempt to relitigate the issue.

Criminal defendants are presumed to be competent and it is the defense burden to prove otherwise. More importantly, competency to stand trial is measured by the relationship between counsel and client: to be deemed competent, the defendant merely needs to have the ability to consult with counsel with a reasonable degree of

understanding, in order to participate in his defense, and he must be able to understand the nature or object of the proceedings against him. See Commonwealth v. Flor, 998 A.2d 606, 617-18 (Pa. 2010); see also Commonwealth v. Hughes, 555 A.2d 1264, 1270 (Pa. 1989) (criminal defendant must have the ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense). This obviously is a very low bar.

It is difficult to conceive of a claim that more directly implicates Strickland v. Washington, 466 U.S. 668 (1984) -- and does not warrant usurping the PCRA's waiver provision – than a defaulted competency to stand trial issue. Who knows better than trial counsel whether the client was "incapable of meaningfully assisting in his defense" at the relevant time? Indeed, if a capital defendant truly was incompetent – was so impaired that he could not even communicate with and assist counsel -- it is difficult to believe that his counsel would not notice, unless counsel himself was incompetent. And, we have Sixth Amendment principles to govern that eventuality: there is no reason to negate a salutary provision of the PCRA.

In this case, trial counsel was conscientious and specifically raised the question of competency. At the very least, in a circumstance where there was a pre-trial competency determination at counsel's request, appellant should have to demonstrate what it was that counsel and the court-appointed experts failed to see or find, instead of being permitted to retrospectively relitigate the issue based on what some FCDO-payroll "expert" conveniently claims years or even decades later. Yet, this is precisely what Brown invites -- at least in the hands of those motivated by agendas rather than by the law.

Unsurprisingly, the FCDO was able to turn to its stable of compliant parrots and produce Dr. Richard Dudley, M.D., a forensic psychiatrist,[1] to conduct a competency evaluation six-years after trial and opine that appellant was not competent at the time of trial. This retrospective opinion was squarely contradicted by multiple contemporaneous sources: the pre-trial competency evaluation, the pre-trial competency hearing, trial counsel's observations during the proceedings, including his testimony that appellant "participated in the decision-making process of his defense," and the trial court's first-hand observations concerning appellant's active participation in pre-trial and trial proceedings and jury selection. See PCRA court opinion, 9/4/12 at 29 (citing trial counsel's PCRA testimony); id. at 29-30 (discussing trial court's observations).

Retrospective competency claims, like retrospective claims of intellectual disability under Atkins v. Virginia, 536 U.S. 304 (2002), obviously are ripe for abuse by anti-death penalty advocacy groups like the FCDO, by like-minded experts in their effective employ parroting their boilerplate opinions, and by defendants themselves, who have nothing to lose by abetting a fraudulent claim. See Commonwealth v. Hackett, 99 A.3d 11, 39 (Pa. 2014) (Castille, C.J., concurring) (explaining similar incentives with Atkins claims).

Brown has fostered an unintended mischief by spawning a cottage industry of fraudulent competency claims pursued by the FCDO, with their complicit mental health experts, in their quest to undo capital judgments, as exemplified by this case. Honesty

---

[1] Dr. Dudley has testified on behalf of FCDO-represented capital defendants in numerous other capital cases, including Commonwealth v. Baumhammers, 92 A.3d 708, 718 (Pa. 2014); Commonwealth v. Fears, 86 A.3d 795, 813 (Pa. 2014), Commonwealth v. Sepulveda, 55 A.3d 1108, 1120 (Pa. 2012), and Commonwealth v. Banks, 29 A.3d 1129, 1136-37 (Pa. 2011), cert. denied, 133 S.Ct. 100 (2012).

and truth should play a stronger role in capital PCRA review; and eliminating this avenue of potential fraud would further that goal.

I recognize that <u>Brown</u> remains the law until a Court majority is convinced of its error, and the Majority properly explains why appellant's retrospective claim of incompetence to stand trial is utterly baseless. Subject to these concerns, I join the Majority Opinion.