J-S63042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
CLAUDE WINSTON, :
:
Appellant : No. 1227 EDA 2015

Appeal from the PCRA Order entered on April 8, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0013213-2007

BEFORE: DONOHUE, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 13, 2015**

Claude Winston ("Winston") appeals from the Order dismissing his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On September 22, 2006, Winston attempted to rob James Crawford ("Crawford") of two bags of marijuana. When Crawford turned and began to run, Winston shot him four to five times from behind. Crawford died as a result of the gunshot wounds. The next day, as Winston was walking past the scene of the murder, he approached an unmarked police vehicle, telling the detectives that someone was killed the night before, and a rumor was circulating that he was responsible. After a few moments, a female walked past the detectives and, without stopping, stated that men were coming to kill Winston. The detectives saw seven men walking towards them, and

immediately placed Winston in the backseat of their vehicle and transported him to police headquarters. In the car, Detective Michael Rocks heard Winston talking on his cell phone and state, "you know where I was last night but I can't say right now."

In April 2008, while being held on unrelated charges, Winston told an inmate that his case involved killing someone "over two bags of weed." Winston boasted about the murder and explained, in detail, how he had shot and killed Crawford. Winston also told the inmate that his mother was going to testify that Winston never left her house the night Crawford was killed. Winston and his mother testified to this effect at trial.

On March 17, 2009, following a jury trial, Winston was convicted of murder of the second degree, robbery, conspiracy to murder, conspiracy to commit robbery, and violations of the Uniform Firearm Act.[1] On the same date, the trial court sentenced Winston to life in prison without the possibility of parole, in addition to an aggregate concurrent prison term of forty-six to ninety-two years. This Court affirmed the judgment of sentence on March 22, 2010, and the Pennsylvania Supreme Court denied Winston's petition for allowance of appeal on October 29, 2010. **See Commonwealth v. Winston**, 996 A.2d 960 (Pa. Super. 2010) (unpublished memorandum), **appeal denied**, 9 A.3d 630 (Pa. 2010).

---

[1] 18 Pa.C.S.A. §§ 2502(b); 3701(a)(1)(i); 903(a)(1); 903(c); 6106(a)(1); 6108.

Winston filed a *pro se* PCRA Petition on June 27, 2011. The PCRA court appointed counsel. Counsel filed an amended Petition on October 23, 2013, arguing that Winston was entitled to relief based on after-discovered evidence in the form of a letter written by Nathaniel Brookens ("Brookens"). Counsel filed a supplemental amended Petition, containing an affidavit from Valerie Garcia ("Garcia"). Thereafter, counsel filed a second amended Petition on May 26, 2014. On October 8, 2014, counsel filed a supplemental Petition containing an additional affidavit from Garcia and an affidavit from Herman Burton ("Burton").[2] In January 2015, Counsel filed a third supplement to the second amended Petition, containing an affidavit from Terrell Haslam ("Haslam")[3]. The PCRA court conducted an evidentiary hearing on February 24, 2015, which it summarized as follows:

> At [the PCRA court's] evidentiary hearing, [Haslam] testified that she met [Winston] in 2007 when they were both incarcerated in the Philadelphia [p]rison [s]ystem. Haslam and [] Brookens were in a romantic relationship at that time. While incarcerated, Brookens assisted [Winston] with preparations for his trial in March of 2009. At some point after [Winston] was convicted, and after Brookens had been released from custody, Haslam received a letter from Brookens. Haslam gave the letter to an individual named Mal to give to [Winston's] cousin, [] Burton[,] to get the letter to [Winston]. In the letter[,] Brookens states "Oh I want you to know something to F**k Rock he was always F**king with you and he got pay back I told you I will handle him didn't I." Haslam explained that she believed the letter referred to the fact that Brookens was jealous that [Winston], known as ["]Rock["], and Haslam were friends.

---

[2] Burton identifies as a woman. *See* PCRA Court Opinion, 4/8/15, at 4 n.5.

[3] Haslam identifies as a woman and is also known as Sabrina. *See* PCRA Court Opinion, 4/8/15, at 4 n.4.

Haslam did not know what Brookens meant when he said he handled [Winston,] but Haslam assumed Brookens would not do anything serious to [Winston]. Brookens never told Haslam what, if anything, he did do. Haslam believed that since Brookens and [Winston] never got into a physical altercation while in custody[,] the only way Brookens could "get" [Winston] was through testifying.

In 2007 and 2008, [] Burton, [Winston's] cousin, was also incarcerated with [Winston], Haslam, and Brookens. At some point after [Winston] was convicted in 2009, Haslam gave Burton the letter Brookens had mailed after he had been released from custody. Haslam stated she gave Burton the letter because "it wasn't fair that [Winston] got convicted for something he didn't do." Burton gave the letter to his mother to give to [Winston].

Garcia, Burton's mother, testified that Burton gave her a letter while she was incarcerated and asked her to give it to [Winston]. Some time passed before Garcia sent the letter to [Winston], who was incarcerated at SCI Graterford.

PCRA Court Opinion, 4/8/15, at 4-5 (citations omitted).

Following the evidentiary hearing, the PCRA court dismissed Winston's Petition. Winston filed a timely Notice of Appeal.

On appeal, Winston raises the following question for our review: "Is [Winston] entitled to post-conviction relief based upon after-discovered evidence in the form of a letter written by Commonwealth witness [] Brookens to [] Haslam?" Brief for Appellant at 4.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of the record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

- 4 -

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Winston argues he is entitled to post-conviction relief as a result of after-discovered evidence, *i.e.*, a letter sent by Brookens, who had presented testimony against Winston at trial regarding their time in prison together. Brief for Appellant at 15, 20. Winston asserts that in the letter sent to Haslam after trial clearly indicating that Brookens testified falsely against Winston. *Id.* at 20. Winston contends that Brookens and Haslam were in a relationship, and that the letter shows that Brookens's testimony was in retaliation for Winston's relationship with Haslam. *Id.* at 20-21. Winston further argues that the evidence the Commonwealth presented at trial was less than overwhelming once Brookens's testimony is removed, and that such testimony held the Commonwealth's case together. *Id.* at 22-25. Winston claims that the letter discloses a motive for Brookens's testimony that was not presented at trial, and that the jury would have acquitted Winston had they heard the contents of the letter. *Id.* at 25-26.

"In order to be eligible for relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated defects found in 42 Pa.C.S.[A.] § 9543(a)(2)[.]" *Commonwealth v. Brown*, 872 A.2d 1139, 1144 (Pa. 2005). To present an after-discovered evidence claim, the petitioner must demonstrate that the evidence was unavailable at the time of trial, but has

subsequently become available and would have changed the outcome of the trial if it had been introduced. 42 Pa.C.S.A. § 9543(a)(2)(vi).

> To be granted a new trial based on [] after-discovered evidence:
>
>> [The petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citations omitted). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Id.* Whether new evidence is corroborative or cumulative depends on the strength of other evidence supporting the conviction. *Id.* at 364. Further, where the new evidence supports a claim that the petitioner previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented. *Id.* at 365.[4]

At trial, Brookens testified that Winston had confessed to him that Winston shot Crawford over two bags of weed. N.T., 3/12/09, at 47-48. During cross-examination, defense counsel thoroughly questioned Brookens

---

[4] The PCRA court found that Haslam received the letter after Winston was convicted; thus, the letter could not have been obtained prior to trial. *See* PCRA Court Opinion, 4/18/15, at 6.

regarding his motive for testifying. *Id.* at 69-115. Winston testified that he caused Brookens to be written up when he caught him in an intimate relationship in a shower. N.T., 3/18/09, at 152. Winston also testified that Brookens tried to touch him, so Winston "cut him off." *Id.* at 152-53. Winston testified he put Brookens "on blast" by encouraging others not to get their haircut from Brookens, and screaming "homo" at Brookens when he got out of the shower. *Id.* at 153. Winston stated that Brookens did not like that Winston "put him out there like that," and that Brookens was "revengeful." *Id.* Winston also testified that Brookens lied in his testimony as a result of Winston putting him "on blast." *Id.* at 164-65.

The letter in question from Brookens to Haslam stated, "Oh I want you to know something to F**k Rock he was always F**king with you and he got pay back I told you I will handle him didn't I[?]" PCRA Court Opinion, 4/8/15, at 7. Winston has not established that the letter was referencing Brookens's trial testimony. *See* PCRA Court Opinion, 4/8/15, at 7 (stating that Winston "presented no evidence that when Brookens referenced 'pay back' and 'handling' [that] [] Brookens was referring to his trial testimony"). Indeed, Haslam testified at the evidentiary hearing that he did not know how Brookens would "pay back" Winston. N.T., 2/24/15, at 52, 62. Thus, Winston has not demonstrated that the letter referred to Brookens's testimony.

Moreover, the letter at most indicates that the relationship between Brookens and Winston was contentious. At trial, defense counsel attempted to establish that, because of this contentious relationship, Brookens had a motive for testifying against Winston during trial. *See* N.T., 3/12/09, at 61-115. The letter in question could only act as additional evidence of Brookens's bias, which is cumulative of the trial testimony. *See* PCRA Court Opinion, 4/18/15, at 7-8; *see also Padillas*, 997 A.2d at 363. Indeed, this evidence could only be used to impeach the credibility of Brookens. *See Padillas*, 997 A.2d at 363. Furthermore, the record supports the PCRA court's determination that the cumulative evidence would not have made a difference in light of other evidence presented at trial. *See* PCRA Court Opinion, 4/8/2015, at 8-9 (pointing out that the Commonwealth presented at trial eyewitness testimony concerning the murder, in addition to physical and ballistic evidence).

Based upon the foregoing, we conclude that the PCRA court properly dismissed the PCRA Petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2015

- 8 -